**Carl L. SWAFFORD, Individually, and as Personal Representative of the Estate of Velda Swafford, Plaintiff,**

v.

**Jack WORTMAN, M.D., Defendant.**

**Civil Action No. 95–1488–JTM.**

United States District Court, D. Kansas.

April 23, 1998.

Gerard C. Scott, Prochaska & Scott, Wichita, KS, Les Weisbrod, Margaret Henning, Morgan & Weisbrod, Dallas, TX, for Plaintiff.

Michael R. O'Neal, Tara L. Bragg, Gilliland & Hayes, P.A., Hutchinson, KS, Randy J. Troutt, Kahrs, Nelson, Fanning, Hite & Kellogg, Wichita, KS, for Defendants.

## MEMORANDUM AND ORDER

MARTEN, District Judge.

This is a medical malpractice action brought under Kansas law. The matter is before the court on defendant's motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). (Doc. 108). Defendant contends the plaintiff's claims are barred by the applicable statute of limitations. The court has reviewed the parties' submissions and the applicable law and is prepared to rule.

As an initial matter, the court rejects the plaintiff's argument that this motion to dismiss should be denied for being filed out of time. As plaintiff notes, this motion was filed past the deadline for motions to dismiss set in the scheduling order. However, the defendant's motion is based on matters which could not have been raised before discovery was completed. The motion should have been captioned as a summary judgment motion, and, as discussed below, the court considers it as a motion brought under Rule 56. The court will not deny the dispositive motion because defendant incorrectly labeled it.

## I. Facts

The following facts are uncontroverted or stated in the light most favorable to the plaintiff.

Dr. Jack Wortman was the Swaffords' family physician for more than twenty years until Velda Swafford began receiving medical treatment in Arlington, Texas in 1993. This action was filed on November 16, 1995, and the First Amended Complaint alleges that Dr. Wortman was negligent from 1987 through on or about November 17, 1993.

As early as 1976, Velda's medical records include references to lumps in her right and left breasts. In 1978, a 1x1 cm nodule on her left breast was noted.

In August 1987, plaintiff discovered the lump in her right breast which is the subject of this lawsuit. She saw defendant about the lump on September 11, 1987. Defendant recommended a mammogram. Velda received a mammogram at Hutchinson Clinic on September 14, 1987. No findings of malignancy were noted, and the mammographer's notes state, in part: "connective tissue pattern is consistent with an element of ductal prominence and fibrocystic disease."

Defendant recommended a clinical recheck three months after September mammogram. In December 1987, a follow-up mammogram was performed. No significant interval changes were noted, and no discrete nodule was found.

Plaintiff continued to be treated by defendant, who conducted breast examinations on June 4, 1988, December 2, 1988, and October 31, 1989. He recommended mammograms in December 1988 and October 1989. The notes on her December 1988 mammogram state as follows:

1) Interval mild enlargement of a benign appearing nodularity density in the 1:30 o'clock position of the right retroareolar area. Recommend clinical correlation, 2) the nodular appearance in the 1:30 o'clock position of the left retroareolar area has remained stable over the course of these exams, 3) no other evidence of potential malignancy is demonstrated.

The October 1989 mammographer's notes indicate: "palpable nodule appears to have been stable over the last 10 months. No other areas suspicious for malignancy are seen on today's exam."

Velda remained concerned about the lump and in November 1989, her husband, the plaintiff, Carl Swafford, telephoned the defendant and related those concerns. According to Carl's deposition testimony, the defendant seemed upset and told Carl that Velda

should see another doctor if she did not have faith in him. Carl responded that they did have faith in the defendant and did not wish to see another doctor.

Velda saw the defendant again in October 1990. He performed a breast examination and ordered a mammogram. The mammogram was performed on November 14, 1990. The mammogram indicated fibrocystic changes. The nodular density appeared slightly more prominent, although it was noted that differences in technique may by the explanation. Clinical follow-up was recommended. Plaintiff saw the defendant again on November 19, 1990. Another mammogram and clinical examination were performed on December 20, 1991. No changes were noted.

Velda was examined by defendant in March, May and August 1992. Notes from those visits indicate fibrocystic breast disease without change. Mild fibrocystic change was noted on a November 16, 1992, mammogram, but the impression was that there was no evidence of malignancy.

On November 30, 1993, Velda underwent a bilateral mammogram and breast ultrasound in Arlington, Texas.[1] Biopsy was recommended. Dr. Waechter performed a biopsy on December 15, 1993, which revealed malignancy. Velda underwent surgery for breast cancer on December 22, 1993. She also was given radiation treatments and chemotherapy.

Velda Swafford died in 1996. Her death was caused by a medical condition unrelated to this action. She was free of cancer at the time of her death.

Dr. Waechter is one of plaintiff's medical experts in this case. He and plaintiff's other medical experts, Dr. Dollinger and Dr. Remenchik, testified in deposition that Dr. Wortman breached the standard of care starting in 1987, when he failed to biopsy the lump in plaintiff's right breast. The plaintiff's expert witnesses testified there were no changes in the lump after November 1990. In affidavits filed in response to the dispositive motion, the plaintiff's experts all stated that defendant was negligent each time he examined Velda, including the 1991 and 1992 visits because failed to refer her to a surgeon for a biopsy and relied only on mammograms and physical examinations for diagnosis. Velda testified that she did not note any changes in the lump from 1987 until the fall of 1993.

## II. Summary Judgment Standards

■ Where, as here, a party brings a motion under Federal Rule of Civil Procedure 12(b)(6), and matters outside the pleadings are presented, the court treats the motion as one for summary judgment under Rule 56.

The standards governing the consideration of a motion for summary judgment are well established. The Federal Rules of Civil Procedure provide that summary judgment is appropriate when the documentary evidence filed with the motion "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A principal purpose "of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The court's inquiry is to determine "whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The court must enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548. The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact on its claim(s). Rule 56, however, imposes no requirement on the moving party to "support its motion with affidavits or other similar materials *negating* the opponent's claim." *Id.* at 323, 106 S.Ct. 2548 (emphasis in original). Once the moving party has properly supported its motion for summary judgment,

---

1. A mammogram was scheduled in Hutchinson for December 7, 1993, but plaintiff canceled.

the nonmoving party may not rest upon mere allegations or denials, but must set forth specific facts showing a genuine issue for trial, relying upon the types of evidentiary materials contemplated by Rule 56. Fed. R.Civ.P. 56(e). Each party must demonstrate to the court the existence of contested facts on each claim it will have to prove at trial. *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548. The court reviews the evidence on summary judgment under the substantive law and based on the evidentiary burden the party will face at trial on the particular claim. *Anderson,* 477 U.S. at 254, 106 S.Ct. 2505.

### III. Analysis

■ K.S.A. § 60–513(a)(7) provides a two-year statute of limitations for medical malpractice actions. K.S.A. § 60–513(c) establishes when such a cause of action accrues:

"A cause of action arising out of the rendering of or the failure to render professional services by a health care provider shall be deemed to have accrued at the time of the occurrence of the act giving rise to the cause of action, unless the fact of injury is not reasonably ascertainable until some time after the initial act, then the period of limitation shall not commence until the fact of injury becomes reasonably ascertainable to the injured party, but in no event shall such an action be commenced more than four years beyond the time of the act giving rise to the cause of action."

■ As stated above, the plaintiff here alleges Dr. Wortman was negligent in failing to order a biopsy, consequently, failing to diagnose Velda's breast cancer from 1987 to 1993. The defendant argues that any claim of negligence on the part of defendant which occurred on or before November 16, 1991, is barred under K.S.A. § 60–513(c). The court agrees. Section 60–513(c) operates as a statute of repose, barring any action for medical malpractice brought more than four years after the act constituting malpractice. Kansas law does not recognize the continuous treatment doctrine as a tolling provision to the statute of repose. *Bonin v. Vannaman,* 261 Kan. 199, syl. ¶ 17, 225–26, 929 P.2d 754 (1996); *Marzolf v. Gilgore,* 914 F.Supp. 450, 453 (D.Kan.1996). Similarly, the plaintiff cannot resurrect claims based on acts occur-

ring outside the period of repose by alleging that they combine with acts occurring within the repose period to form a single act of malpractice. *Id.* at 454. Therefore, the court grants summary judgment as to any claims that Dr. Wortman committed medical malpractice before November 16, 1991.

The court turns, then, to the question of whether there is any competent evidence that this defendant violated the applicable standard of care at any time after November 16, 1991. Plaintiff presents affidavits and supplemental reports from the medical experts stating their opinions that Dr. Wortman was negligent every time he examined plaintiff's breast lump and relied on mammogram reports instead of recommending a biopsy, including 1991 and 1992 visits. Defendant contends these affidavits and supplemental reports contradict the witnesses' prior testimony and reports and thus should not be considered as evidence opposing summary judgment. Defendant moves to strike the supplemental expert reports. (Doc. 117).

■ It is well established that the court has the authority to exclude affidavit evidence which is contrary to the affiant's prior deposition testimony if the affidavit is an attempt to create a sham issue of fact. *Franks v. Nimmo,* 796 F.2d 1230, 1237 (10th Cir.1986). Factors relevant to the existence of a sham fact issue include: whether the affiant was cross-examined during his earlier testimony, whether the affiant had access to the pertinent evidence at the time of his earlier testimony or whether the affidavit was based on newly discovered evidence, and whether the earlier testimony reflects confusion which the affidavit attempts to explain. *Id.* at 1237.

■ The court has reviewed the expert witnesses' deposition testimony, their initial reports and the affidavits supplied as supplementation. Taking into account the factors listed in *Franks,* the court concludes the affidavits clarify, rather than contradict, the witnesses' prior statements on the subject of when Dr. Wortman was negligent. Likewise, Dr. Dollinger's statement in his affidavit that the decedent had "secondary inflammatory cancer" and not "inflammatory cancer" is a clarification of terminology, rather than a

**1434**

reversal of an earlier opinion. Accordingly, the court will not exclude the affidavits as evidence and denies the motion to strike. Furthermore, these expert witness opinions are evidence that the defendant was negligent within four years before the case was filed. Therefore, the statute of repose does not bar plaintiff's claims that defendant committed medical malpractice after November 15, 1991.

 Finally, the court considers the two-year statute of limitations under K.S.A. § 60–513(a)(7). It is uncontroverted that defendant's last treatment of plaintiff regarding the lump in her breast was in November 1992, when she underwent a mammogram at his direction. This is, of course, more than two years before this action was filed in November 1995. Again, K.S.A. § 60–513(c) provides that a cause of action for medical malpractice accrues at the time of the act giving rise to injury or, if the injury is not reasonably ascertainable at that time, at the time the injury becomes reasonably ascertainable. Where there is conflicting evidence, the question of when an injury became reasonably ascertainable is one for the trier of fact. *Hecht v. First Nat'l Bank & Trust Co.*, 208 Kan. 84, syl. ¶ 2, 93, 490 P.2d 649 (1971).

 The defendant here argues that Velda Swafford's injury was reasonably ascertainable before November 16, 1993, because she was concerned about the lump in her breast before that time. However, throughout his treatment of Velda Swafford, defendant continually diagnosed the lump as benign. Although Kansas has rejected the continuous treatment doctrine as a tolling provision, evidence that the defendant continued to treat the decedent is relevant to the question of when her injury was reasonably ascertainable. *Jones v. Neuroscience Assoc's, Inc.*, 250 Kan. 477, 488–89, 827 P.2d 51 (1992). There is conflicting evidence about the substance of the 1989 telephone conversation between defendant and Carl Swafford, but viewed in the light most favorable to the plaintiff, the defendant became upset with Carl Swafford and told him they should find another doctor if they did not trust him. A medical malpractice plaintiff does have a duty to reasonably investigate, *Kelley v. Barnett*, 23 Kan.App.2d 564, 568, 932 P.2d 471

(1997), but the court is aware of no authority, from this or any other jurisdiction, for the proposition that this duty includes the obligation to question the advice of one's treating physician or seek a second opinion regarding a treating physician's advice. *But see Simmons v. Urquhart*, 664 A.2d 27, 33 (Md.App. 1995) (holding patient does not have such a duty).

Based on the evidence in the record, the court cannot conclude as a matter of law that Velda Swafford's injury was reasonably ascertainable at any time before she was actually diagnosed with cancer in December 1993. Accordingly, plaintiff's medical malpractice claim is not barred by the two-year statute of limitations.

**IT IS BY THIS COURT THEREFORE ORDERED** that the defendant's motion to dismiss (Doc. 108) is hereby granted (in part and denied in part).

**IT IS FURTHER ORDERED** that defendant's motion to strike plaintiff's supplementation of expert witness information (Doc. 117) is hereby denied.