(932 P.2d 471)

No. 75,305

GARY M. KELLEY, *et al.*, *Appellants*, v. THOMAS E. BARNETT, JR., M.D., *et al.*, *Appellees.*

Opinion filed February 28, 1997.

*William H. Pickett, David T. Greis,* and *Gregory J. Abella,* of William H. Pickett, P.C., of Kansas City, Missouri, and *Michael E. Callen,* of Kansas City, for appellants.

*Scott K. Logan* and *M. Bradley Watson,* of Logan & Logan, L.C., of Prairie Village, for appellee Thomas E. Barnett, Jr., M.D.

*M. Warren McCamish* and *Phillip P. Ashley,* of Williamson & Cubbison, of Kansas City, for appellee William C. Sclar, M.D.

Before KNUDSON, P.J., RULON, J., and ROBERT J. SCHMISSEUR, District Judge, assigned.

SCHMISSEUR, J.: This is a medical malpractice and wrongful death case stemming from the medical treatment and eventual death of Mary Brown Kelley. The action is brought by Mary's husband Gary M. Kelley, individually and as the special administrator of her estate, and her daughter Shannon E. Kelley against Thomas E. Barnett, Jr., M.D., and William C. Sclar, M.D.

The plaintiffs contend that the trial court erred by granting the defendants' motions for summary judgment, both of which alleged that the causes of action were barred by the statute of limitations.

On March 18, 1990, Mary Kelley experienced abdominal pain and was subsequently admitted to the hospital. The following day, Dr. Sclar operated on her and removed parts of her colon. Dr. Barnett was a consultant for Mary Kelley's care upon her hospital admission, and he provided post-operative care.

Following the first surgery, Mary Kelley experienced severe pain. Dr. Sclar performed a second operation on March 25, 1990, for post-operative bowel obstruction. During the operation, Dr. Sclar discovered a blood clot that had caused most of Mary Kelley's small bowel to cease functioning. Dr. Sclar interrupted the surgery to discuss the situation with Gary Kelley and Shannon Kelley. Advising them that Mary Kelley's condition was catastrophic, Dr. Sclar indicated that he would have to remove most of her small bowel.

After the surgery, Dr. Sclar advised the plaintiffs that there were potentially serious problems in Mary Kelley's future care and treatment, including the indefinite need for Total Parental Nutrition (TPN). TPN patients require feeding through a tube and are highly susceptible to infection. On April 23, 1990, Mary Kelley was discharged from the hospital.

On October 20, 1990, Mary Kelley suffered a major stroke, which left her permanently paralyzed. Mary Kelley died on September 26, 1991. The plaintiffs filed a petition on February 10, 1993.

Each defendant filed a motion for summary judgment, claiming that the action was barred by the statute of limitations. After the motions were granted by the trial court, the plaintiffs filed a timely appeal.

"The burden on the party seeking summary judgment is a strict one. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is

entitled to judgment as a matter of law. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal we apply the same rule, and where we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied. [Citations omitted.]" *Mitzner v. State Dept. of SRS*, 257 Kan. 258, 260-61, 891 P.2d 435 (1995).

At the hearing on the motions for summary judgment, the parties disputed the plaintiffs' technical compliance with Kansas Supreme Court Rule 141 (1996 Kan. Ct. R. Annot. 162) regarding the procedure for summary judgment motions. Since the major dispute between the parties is a legal one rather than a factual one, we view this technical compliance dispute as superfluous.

In the present case, the applicable statute of limitations is found in K.S.A. 60-513(a), which provides:

"The following actions shall be brought within two years:

. . . .

(5) An action for wrongful death.

. . . .

(7) An action arising out of the rendering of or failure to render professional services by a health care provider, not arising on contract."

Further, 60-513(c) provides:

"A cause of action arising out of the rendering of or the failure to render professional services by a health care provider shall be deemed to have accrued at the time of the occurrence of the act giving rise to the cause of action, unless the fact of injury is not reasonably ascertainable until some time after the initial act, then the period of limitation shall not commence until the fact of injury becomes reasonably ascertainable to the injured party, but in no event shall such an action be commenced more than four years beyond the time of the act giving rise to the cause of action."

Accordingly, the statute of limitations applicable to both counts in the plaintiffs' petition is the 2-year time period. In *Jones v. Neuroscience Assocs., Inc.*, 250 Kan. 477, 481, 827 P.2d 51 (1992), the 2-year statute of limitations period for filing a medical malpractice claim was at issue. Experiencing a problem with a radial nerve, the plaintiff filed her cause of action more than 2 years after surgery. She argued that the statute of limitations was not triggered until

she knew the extent of her injury. The defendants argued that the statute of limitations begins upon knowledge of the fact of injury, not the extent of injury.

In *Jones*, 250 Kan. at 489, the court concluded:

"Under K.S.A. 60-513(c), a cause of action in medical malpractice does not accrue until such time as substantial injury results from the alleged act of malpractice or until the fact of injury becomes reasonably ascertainable. Where there is conflicting evidence as to when a cause of action for medical malpractice is deemed to have accrued under K.S.A. 60-513(c), the matter becomes an issue for determination by the trier of fact.

"Under the facts of this case evidence stemming from the 'physician-patient relationship' or 'continuous treatment' doctrines is relevant upon the issue of when it was reasonably apparent to Jones that her injury was permanent, *i.e.*, substantial. Since the evidence is inconclusive, Jones must be afforded the right to have that issue determined by the trier of fact. If we were to decide otherwise, patients having surgery and then suffering an unexpected result would be required to immediately determine if the unexpected result was a substantial injury resulting from malpractice. This would be an uncalled-for result, seriously impairing the physician-patient relationship."

In *Jones*, 250 Kan. at 479, the day after surgery, the plaintiff was told there had been "a little problem during the surgery." Throughout the following several months, the plaintiff was continually assured that the problem would be resolved.

In the present case, Mary Kelley's second surgery was interrupted by Dr. Sclar, who told the plaintiffs that there had been a catastrophe and that most of Mary Kelley's small bowel would have to be removed. Further, Dr. Sclar told the plaintiffs that if Mary Kelley were older, he "would not bother" to try to remedy the situation. After the surgery, the plaintiffs were informed of potentially serious problems relating to Mary Kelley's long-term feeding situation and her susceptibility to infection.

The trial court indicated that this information should have informed the plaintiffs that the injury was substantial. Further, even if the injury were not ascertainable as substantial at that time, the trial court ruled that it certainly was ascertainable as a substantial permanent injury when Mary suffered a major stroke more than 2 years before her cause of action was filed.

In *Davidson v. Denning*, 259 Kan. 659, 914 P.2d 936 (1996), the Kansas Supreme Court reviewed two Court of Appeals cases: *Davidson v. Denning*, 21 Kan. App. 2d 225, 897 P.2d 1043 (1995), and *Raile v. Nationwide Agribusiness Ins. Co.*, No. 72,260, unpublished opinion filed June 23, 1995. The court also discussed *Jones* and other statute of limitations cases that dealt with the question of when the statute of limitations begins to run in a wrongful death case.

The present case involves both a medical malpractice action and a wrongful death action. *Davidson* analyzes both the 2-year statute of limitations for medical malpractice actions and the 2-year statute of limitations as applied to wrongful death actions. Thus, the *Davidson* analysis is highly applicable here.

*Davidson* states:

"The discovery rule, as codified at K.S.A. 60-513(b) and (c), states that the limitations period starts when the 'fact of injury' is 'reasonably ascertainable.' The phrase 'reasonably ascertainable' means that a plaintiff has the obligation to reasonably investigate available sources that contain the facts of the death and its wrongful causation." 259 Kan. at 678-79.

The duty to reasonably investigate should also apply to medical malpractice cases. *Davidson* also states: " 'Reasonably ascertainable' does not mean 'actual knowledge.' " 259 Kan. at 678. "K.S.A. 60-513(b) and (c) provide that the limitations period starts when the 'fact of injury' becomes 'reasonably ascertainable.' Inherent in 'to ascertain' is 'to investigate.' " 259 Kan. at 675.

The 2-year medical malpractice statute of limitations is discussed in *Davidson*, 259 Kan. at 671-73, which states:

"We applied the discovery rule to the statute of limitations in several medical malpractice cases involving living patients. In *Jones v. Neuroscience Assocs., Inc.*, 250 Kan. 477, 827 P.2d 51 (1992), the district court granted the defendants' motions for summary judgment, ruling the action was time barred. We reversed on the statute of limitations issues. 250 Kan. at 489. We cited *Cleveland v. Wong*, 237 Kan. 410, 701 P.2d 1301 (1985), and *Hecht v. First National Bank & Trust Co.*, 208 Kan. 84, 490 P.2d 649 (1971), as persuasive authority for our decision. 250 Kan. at 489.

"*Jones* concerned the question of when an injury received from surgery first became 'substantial,' or permanent, after doctors had repeatedly assured Mrs. Jones that her condition would resolve over time. Neither in *Davidson* nor in

*Raile* is there a suggestion that medical personnel made any inaccurate or misleading representations to Mrs. Davidson or Mr. Raile concerning the cause of death.

"In *Cleveland*, plaintiff, experiencing recurrent urinary tract infection and other related problems, sought treatment from the defendant doctor, who performed a resection procedure on plaintiff's prostate on May 19, 1978. Plaintiff filed suit on August 14, 1980. The question of when plaintiff's injury was 'reasonably ascertainable' and whether the action was therefore timely filed was submitted to the jury, which determined that the action was timely. We affirmed. *Cleveland*, like *Jones* and unlike either *Davidson* or *Raile*, involved a patient injured from surgery who was told by the treating surgeon and personal physician that the conditions were temporary and normal immediately following surgery. The passage of time revealed the physicians' statements to be wrong. Thus, plaintiff had no reason to suspect that the conditions were permanent or the result of malpractice. 237 Kan. at 414.

"In *Hecht*, plaintiff was referred to the defendant doctors for radiation therapy for Hodgkin's disease in 1964 and received 20 treatments. In January 1966, plaintiff was diagnosed with a recurrence of Hodgkin's disease and was referred to defendants for additional x-ray therapy and treatment. *Hecht* also involved an injury that could not be evaluated as permanent until the passage of time. Plaintiff's doctors believed that the condition would heal.

"We have applied the discovery rule in a non-malpractice personal injury case, *Gilger v. Lee Constr., Inc.*, 249 Kan. 307, 820 P.2d 390 (1991). The district court in *Gilger* granted summary judgment for defendants on statute of limitations grounds. The Court of Appeals reversed. *Gilger v. Lee Constr., Inc.*, 14 Kan. App. 2d 679, 687-89, 798 P.2d 495 (1990). We affirmed the portion of the Court of Appeals opinion concerning application of the K.S.A. 60-513(b) discovery rule. *Gilger* also involved a situation where the tortfeasor made inaccurate representations to the injured plaintiff, forestalling plaintiffs' efforts to find the real cause. The injury in *Gilger* was ongoing, and plaintiffs continued to be harmed until the cause was determined and corrected. In *Davidson* and *Raile*, the injury was immediate and final.

"*Friends University v. W.R. Grace & Co.*, 227 Kan. 559, 608 P.2d 936 (1980), a roof-leak case, provides guidance about when an injury becomes 'reasonably ascertainable' within the meaning of K.S.A. 60-513(b). The university's new library was completed in September 1969 and began to leak in 1970 or 1971. The university complained to the roofing company and manufacturers. Repairs were first attempted in 1970, but were not successful. Conferences and inspections were held, but the roofing company and manufacturers each denied liability. In April 1975, an independent expert determined that the cause of the leak was defective material supplied by W.R. Grace & Co., and the structure would require reroofing. The university filed suit on March 29, 1977, claiming negligence, strict liability in tort, and breach of implied warranty. The defendant manufacturers were granted summary judgment based on the statute of limitations. On appeal, the

university argued that under 60-513(b), the statute of limitations did not commence to run until the expert's report was obtained, citing *Hecht* as authority. We disagreed with the university and affirmed summary judgment, stating:

'The new roof was obviously defective in some respect when leaking occurred. These defendants did not advise the plaintiff that the roof would heal itself or take any action to lull plaintiff into believing the problem was less severe than it appeared.

. . . .

'In the case before us a new roof on a new building was leaking. The cause had to be defective design, materials, workmanship, or some combination thereof. At any time Friends could easily have obtained an expert opinion on the precise cause or causes for the leaking roof.' 227 Kan. at 562-65.

"Although the above cases provide general guidance on the question of when the 'fact of injury' is 'reasonably ascertainable,' none answer the question of how the discovery rule applies in wrongful death actions."

Dealing more specifically with the wrongful death issue, *Davidson*, 259 Kan. at 668-69, states:

"K.S.A. 60-1901 provides:

'If the death of a person is caused by the wrongful act or omission of another, an action may be maintained for the damages resulting therefrom if the former might have maintained the action had he or she lived, in accordance with the provisions of this article, against the wrongdoer, or his or her personal representative if he or she is deceased.'

. . . .

"In 1963, when the Code of Civil Procedure was revised and enacted in its present form, the 2-year limitation in the wrongful death statute was relocated to what is now K.S.A. 60-513(a)(5). Consequently, '[a]n action for wrongful death' is specifically listed as one that must be brought 'within two years.' We have observed that this revision was made for convenience and organizational purposes rather than to effect a change in the application of the wrongful death statute. [Citation omitted.]

. . . .

"The term 'reasonably ascertainable' as applied in 60-513(b) and (c) in a wrongful death action suggests an objective standard based on an examination of the surrounding circumstances. [Citation omitted.]"

*Davidson* concludes:

"We have not established a 'bright line' rule that the wrongful death limitations period may never be extended beyond 2 years from the date of death. Here, there were no circumstances present justifying an extension, such as concealment of the

fact of death or of medical records not a misrepresentation, alteration, inaccuracy, or falsification of any type." 259 Kan. at 679.

*Crockett v. Medicalodges, Inc.*, 247 Kan. 433, 438-41, 799 P.2d 1022 (1990), discusses when the statute of limitations begins to run in a wrongful death action. In *Crockett*, the plaintiff argued that the statute of limitations would not begin to run until the date of death. It is true that the cause of action must be filed within at least 2 years of the date of death; however, the statute of limitations will begin to run sooner if the injury is reasonably ascertainable before that time. Likewise, in a medical malpractice case, the statute of limitations accrues as soon as the injury occurs or when it is reasonably ascertainable.

Here, the plaintiffs argue that Mary Kelley's injury must have been known and that the causal connection between the injury and the negligence of the defendants must have been identifiable before the statute of limitations began to run. As explained in *Davidson* and *Jones*, however, once an injury is known to be substantial and permanent, there is a duty placed on the plaintiff to reasonably investigate in order to determine whether negligence caused the damage. By the time of her stroke, if not before, Mary Kelley's condition was substantial and permanent. There is no allegation that the defendants attempted to downplay the seriousness of Mary Kelley's condition or to explain her condition as temporary.

If plaintiffs were allowed to wait to commence suit until directly confronted with evidence of negligence, the statute of limitations would almost never begin to run. The plaintiffs were aware of the severity of Mary Kelley's injury and should have investigated the possibility of negligence within at least 2 years of her stroke.

The trial court did not err in ruling that the statute of limitations barred the plaintiffs' causes of action.

Affirmed.