**Fred N. WALKER, Plaintiff-Appellant,**

v.

**ARMCO STEEL CORPORATION, a corporation, Defendant-Appellee.**

**No. 78–1477.**

United States Court of Appeals,
Tenth Circuit.

Submitted Oct. 17, 1978.

Decided Feb. 14, 1979.

Don Manners of Manners, Cathcart & Lawter, Oklahoma City, Okl., for plaintiff-appellant.

Burton J. Johnson and Richard L. Keirsey of Looney, Nichols, Johnson & Hayes, Oklahoma City, Okl., for defendant-appellee.

Before McWILLIAMS, BARRETT and DOYLE, Circuit Judges.

WILLIAM E. DOYLE, Circuit Judge.

This is a Calendar C case.

This is a diversity action which raises the question whether Rule 3 of the Federal Rules of Civil Procedure or § 97 of Okla. Stat. title 12 (West Supp. 1978) determines when a case is filed in the federal court. Is it a state law or federal question? The

underlying problem is whether *Ragan v. Merchants Transfer & Warehouse Co.*, 337 U.S. 530, 69 S.Ct. 1233, 93 L.Ed. 1520 (1949) or *Hanna v. Plumer*, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965) governs.

The United States District Court for the Western District of Oklahoma dismissed the action on the ground that it was outlawed by the statute of limitations in Oklahoma because it had not been filed in accordance with the Oklahoma rule; that although the case was actually filed in time, process was not served within the period of limitations prescribed by the Oklahoma statute. The trial court reasoned that the Oklahoma filing rule was integrated in the pertinent Oklahoma limitations provision. The trial court ruled that *Hanna v. Plumer, supra,* did not expressly overrule *Ragan v. Merchants Transfer & Warehouse Co., supra,* and, therefore, the latter case governed.

The facts are these:

Appellant Walker suffered an injury when a nailhead fragmented and hit his right eye, on August 22, 1975, while he was engaged in his work. The suit against Armco Steel Corporation, the manufacturer of the nail, alleges that the nail was defective. The complaint was filed in the Clerk's office of the United States District Court for the Western District of Oklahoma on August 19, 1977. Summons was issued the next day. For reasons which do not appear in the record, process was not served on Armco until December 1, 1977. On January 5, 1978, Armco filed a motion to dismiss plaintiff's complaint asserting that the statute of limitations barred the action. The motion was granted on April 18, 1978. The date of filing was three days prior to the date that the two-year statute would have barred the action. The issue, as indicated above, is when, if ever, the statute of limitations is tolled.

The Oklahoma statute which was relied on by the trial court and which is here sought to be applied reads:

An action shall be deemed commenced, within the meaning of this article, as to each defendant, at the date of the summons which is served on him, or on a codefendant, who is a joint contractor or otherwise united in interest with him. Where service by publication is proper, the action shall be deemed commenced at the date of the first publication. An attempt to commence an action shall be deemed equivalent to the commencement thereof, within the meaning of this article, when the party faithfully, properly and diligently endeavors to procure a service; but such attempt must be followed by the first publication or service of the summons, or if service is sought to be procured by mailing, by a receipt of certified mail containing summons, within sixty (60) days.

Okla.Stat.Ann. tit. 12, § 97 (West Supp. 1978).

The above statute makes provision for faithful and diligent endeavor to procure service if it is carried out within 60 days of date of issuance, provided the summons is issued within the limitations period. Although the summons here was shown to have issued on time, the service was not completed within 60 days, nor is there any evidence that there was a diligent attempt to procure service. Therefore, the only hope which the plaintiff-appellant could entertain would be that the federal procedural provision would be ruled applicable.

There is another provision in the Oklahoma compilation, Okla.Stat.Ann. tit. 12, § 151 (West Supp. 1978), which provides that:

A civil action is deemed commenced by filing in the office of the court clerk of the proper court a petition and by the clerk's issuance of summons thereon. Where service by publication is proper, the action shall be deemed commenced at the date notice of publication is signed by the court clerk. Where service is sought to be effected by mailing, the action shall be deemed commenced when the envelope containing summons, addressed to the defendant or to the service agent if one has been appointed, is deposited in the United States mail with postage prepaid for forwarding by certified mail with a request for a return receipt from addressee only.

There is no indication, however, that this adds anything to §§ 95 and 97, both of which are construed by the Oklahoma Court of Appeals and the Supreme Court as limitation provisions.

The applicable Federal Rule is free of all of these complications. Rule 3 of the Federal Rules of Civil Procedure simply provides: "A civil action is commenced by filing a complaint with the court."

The question which we must consider is whether the Oklahoma statute, § 97, must be applied as the trial court applied it or whether Rule 3 of the Federal Rules of Civil Procedure should have been held to govern. The underlying issue is whether the doctrine of *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), is consistent with the basic diversity notion that a federal court, sitting in diversity cases and administering state law, must apply not only substantive law of the forum state, but procedural law as well if the application of state procedural law changes the outcome of the case.

Unquestionably, § 97, *supra* (the Oklahoma statute), is in direct conflict with Rule 3 of the Federal Rules of Civil Procedure with respect to what constitutes a filing which will toll the statute of limitations. That the Oklahoma provision is not only a filing provision but a limitations one as well is to be gleaned from the statute as well as the cases. *See, for example, Tyler v. Taylor*, 578 P.2d 1214 (Okl.App. 1977), and *State ex rel. Roacher v. Caldwell*, 522 P.2d 1031 (Okl. 1974). So even though the Oklahoma statute may be complex and even mysterious as compared with the federal provision in that it obligates the litigant not only to timely file the case but also to see that process issues and that the adversary is served on time in order to toll the statute of limitations, it is the law of Oklahoma. The fact that the local law appears technical and cumbersome is not a factor to be weighed. The controlling aspect is whether the outcome of the case is changed as a result of applying or not applying the state rule.

In support of the mentioned approach, defendant-appellee urges that the Supreme Court's decision in *Ragan v. Merchants Transfer & Warehouse Co., supra,* which held state law to be applicable in deciding when a case has been filed for purposes of tolling the statute of limitations, governs. *Ragan*, it is to be noted, is a decision which originated in this circuit, and a Kansas statute similar in terms to the Oklahoma statute before us (§ 97, *supra* ), was applied in preference to the federal rule on the same subject. As in the present case, the Kansas statute required filing of the complaint, issuance of the summons and service of the summons. All of these were tied to the limitations statute. Indeed this court, in reversing the district court, determined that the requirement of service of summons within the statutory limitation was an integral part of that state's statute of limitations. See *Merchants Transfer and Warehouse Co. v. Ragan,* 170 F.2d 987, 992–93 (10th Cir. 1948).

*Ragan*, of course, religiously followed *Guaranty Trust Co. v. York,* 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945). The outcome test was thus held to apply even in this area of pure procedure. The question boils down to whether *Ragan* must be applied here.

The Supreme Court's decision in *Hanna v. Plumer, supra,* gave promise that the corner had been turned, so to speak, as far as *Guaranty* and *Ragan* continuing to dominate where the question is one of pure procedure such as we have here. *Hanna* construed a Massachusetts statute which had the same kind of complicated statute with respect to mode of service of process as we find here. In *Hanna*, as here, the application of the outcome test would have resulted in the state law being applied and in the defendant prevailing. In the opinion which was written by Chief Justice Warren, the outcome determinative test was rejected and the Federal Rules of Civil Procedure were ruled applicable. However, the Court in a footnote distinguished *Ragan* even though *Ragan* had applied the outcome determinative test which the Court was engaged in rejecting at least to the extent

that pure procedural questions were being decided. The *Hanna* opinion observed that every procedural variation is in fact outcome determinative. The Court acknowledged that the outcome determinative test would have a marked effect on the outcome of litigation before it. It said, however, that the test was not to be regarded as a talisman. Inasmuch as *Ragan* is based entirely upon the *Guaranty Trust* conception that outcome determinative is the answer, the refusal of the Court to apply this result in the *Hanna* decision is irreconcilable with that in *Ragan*.

We simply point up the dilemma. We do not do so in any spirit of criticism. The present problem is, however, that the Supreme Court in *Hanna*, although it could be said to have shown dissatisfaction with *Ragan*, did not expressly overrule it. Professors Wright and Miller have pointed this out and have noted also that the Supreme Court knows how to overrule a case when it wishes to do so. They further observe that *Ragan* has continued vitality. *See* 4 C. Wright & A. Miller, Federal Practice and Procedure: Civil § 1057 at 190–191 (1969). It is true, however, that although the circuits are divided on the question, the preponderance of the circuits and the district courts within the circuits support the view that *Ragan* continues to be viable.

More recently this court rendered an opinion which selected Rule 3 of the Federal Rules of Civil Procedure. This was in *Chappell v. Rouch*, 448 F.2d 446 (10th Cir. 1971). This action arose in Kansas as did *Ragan*, but the statute which was considered in *Ragan* had been modified. The reasoned opinion by Judge McWilliams concluded that *Ragan* was not binding in view of this fact. The Oklahoma statute which we consider, however, is indistinguishable from the statute which was construed in *Ragan*, so even if we were desirous of applying Rule 3, which we are, we are not free to do so. (This writer at least would prefer the federal rule.)

This court has recently issued its opinion in *Lindsey v. Dayton-Hudson Corp.*, 592 F.2d 1118 (10th Cir. 1979). The opinion by Judge Logan is extremely well presented and it too adopts the view that *Ragan* continues to be authoritative.

We recognize that decisions are frequently allowed to die on the vine, so to speak. We also recognize that in such instances death does not, as a practical matter, take place. If, however, *Ragan* was intended to die a natural death, it failed to happen.

In the Tenth Circuit we have in addition a judicial administration problem, because since the *Ragan* case originated here it continues to be the law of this circuit. The Supreme Court not only affirmed the Tenth Circuit, but lavishly praised the decision as well.

 The Supreme Court would perform a great service if it were to clear away the dilemma which exists as a result of the conflict between *Ragan* and *Hanna*. So far it has not done so, and until the Supreme Court acts we feel constrained to follow *Ragan*.

Accordingly, the judgment of the district court is affirmed.