**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 23 2004**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

RICK L. BRADLEY,

      Plaintiff-Appellant,

v.

J.E. VAL-MEJIAS, M.D., THE
GALICHIA MEDICAL GROUP, P.A.,

      Defendants-Appellees.

No. 02-3421

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**
**(D.C. No. 00-2395-GTV)**

---

Timothy Buxton, (Anthony Viorst and James E. Puga on the briefs) Denver, Colorado, for
Plaintiff-Appellant.

Stephen M. Kerwick, (Amy S. Lemley with him on the brief) Foulston Siefkin LLP,
Wichita, Kansas, for Defendants-Appellees.

---

Before **MURPHY, HOLLOWAY** and **McCONNELL**, Circuit Judges.

---

**HOLLOWAY**, Circuit Judge.

---

      This is an appeal from a summary judgment for the Defendants based upon the

statute of limitations in a medical malpractice diversity case arising under Kansas state

law.  Plaintiff was diagnosed in July 1997 with vertigo and shingles by the Defendant Dr.

Val-Mejias. In September 1998, it was discovered that the cause of Plaintiff's symptoms was a fractured ventricular pacemaker lead. Plaintiff alleges the Defendant Val-Mejias's July 1997 diagnosis was both malpractice and an intentional falsehood intended to coverup Defendant's earlier malpractice in implanting the pacemaker. By May 1998, however, while Plaintiff did not know he had a fractured ventricular lead, he had some evidence that his symptoms were not due to either shingles or vertigo and instead were pacemaker related. Plaintiff brought this suit on September 1, 2000, alleging malpractice against Dr. Val-Mejias and the Galichia Medical Group.

The district judge was persuaded that the 2 year Kansas statute of limitations had run and granted summary judgment on limitations grounds. Memorandum and Order, 238 F. Supp. 2d 1242 (2002). We agree.

**I**

*Background*

On September 3, 1998, Plaintiff Rick Bradley was diagnosed with a fractured ventricular lead to his pacemaker after being admitted to a hospital emergency room with chest pain. This ventricular lead was implanted seventeen years earlier in 1981 as part of a pacemaker Bradley received to treat a cardiac rhythm disturbance known as sick sinus syndrome. In 1988, Bradley experienced a problem with his pacemaker and consulted with Defendant Dr. J.E. Val-Mejias who was a member of the Galichia Medical Group (GMED), the other defendant in this case. Bradley complained that his left arm was

shaking and that his pacemaker "jumped." As treatment, Dr. Val-Mejias reprogrammed Bradley's pacemaker.

Four years later, in September of 1992, Dr. Val-Mejias, assisted by Dr. Demosthenes Klonis, another GMED physician, replaced Bradley's pacemaker but reused the ventricular leads from the old pacemaker. In August of 1993, Bradley again experienced problems with his pacemaker after being involved in a car accident. As treatment, Dr. Klonis replaced the generator of Bradley's pacemaker but left the ventricular leads untouched.

In February of 1997, Bradley was admitted to a hospital emergency room complaining of heart palpitations, lightheadedness, and left arm numbness. No heart or pacemaker problem was diagnosed at that time. While Bradley was soon released from the hospital, his symptoms continued. Soon thereafter, in March of 1997 Bradley consulted about his health problems with Dr. Val-Mejias who diagnosed him as having an inner ear problem. This diagnosis was repeated by Dr. Val-Mejias during visits with Bradley in May and June of 1997. Following the June consultation, Dr. Val-Mejias wrote that Bradley's pacemaker was "perfectly adjusted" and Bradley's symptoms of vertigo and partial paralysis were due to an inner ear problem and shingles.

On April 29, 1998, Bradley testified before an administrative law judge in order to receive Social Security disability benefits. At that hearing, Bradley testified that he suffered dizziness, numbness, and had been feeling generally poor. Bradley also testified

that in his opinion, his symptoms were caused by his pacemaker. One week later, Bradley consulted with a cardiologist, Dr. Candice Morgan, who traced his symptoms potentially to his pacemaker and performed more programming adjustments. The next day, Bradley reported to Dr. Morgan that his symptoms abated and was told to return in six months for a pacemaker evaluation.

Four months later, on September 3, 1998, Bradley was admitted to the emergency room where it was determined that the ultimate cause of his illness was a fractured ventricular lead. On September 1, 2000, Bradley filed suit against Dr. Val-Mejias and GMED for medical malpractice and fraudulent concealment in the United States District Court for the District of Kansas, asserting diversity jurisdiction.

## II

*The District Court order*

Bradley asserted a medical malpractice and fraudulent concealment claim against Dr. J.E. Val-Mejias, M.D. and The Galichia Medical Group, P.A. on September 1, 2000 in his federal court suit. Interpreting state law, the district court granted Dr. Val-Mejias summary judgment on both of these claims based upon the two year statute of limitations on such claims. K.S.A. § 60-513. Memorandum and Order, 238 F. Supp. 2d 1242 (2002). In granting summary judgment on the medical malpractice claims, the district judge first noted that any cause of action Bradley could assert against Dr. Val-Mejias for

acts occurring before September 1, 1996 was seemingly barred by Kansas' four year statute of repose. K.S.A. § 60-513(c). The district court, however, declined to grant summary judgment on that ground because of the possibility that Dr. Val-Mejias had engaged in fraudulent concealment from 1992 to after September 1996 which would equitably estop Dr. Val-Mejias from asserting the statute of repose.

The district court, however, found that the possibility of fraudulent concealment did not bar application of the statute of limitations because by May of 1998, based upon information he received from Dr. Morgan, Bradley knew that his physical problems were due to his pacemaker and, therefore, that Dr. Val-Mejias had misdiagnosed him. This knowledge, reasoned the district court, also served to render inoperative any concealment by Dr. Val-Mejias. And, since the statute of limitations is triggered when the fact of injury becomes reasonably ascertainable, the district court held that the statute of limitations was triggered in May of 1998. Accordingly, as Bradley did not file suit until September 1, 2000, more then two years after May of 1998, his medical malpractice claims were barred.

The district court granted summary judgment on the fraudulent concealment claims on virtually identical grounds as the medical malpractice claims. The district court first noted that fraudulent concealment claims are governed by a statute of limitations identical to that for medical malpractice–a two year statute of limitations that is triggered when the fact of injury becomes reasonably ascertainable. The district court then reasoned that

since Bradley became aware of his misdiagnosis by Dr. Val-Mejias in May of 1998, he also became aware of any attempt by Dr. Val-Mejias to conceal this fact. Accordingly, the district court held that the statute of limitations was triggered in May of 1998 and Bradley's fraudulent concealment claims were barred.

In addition to granting summary judgment for Dr. Val-Mejias, the district court denied Bradley's motion to amend his complaint to add a direct negligence claim against GMED in the creation and management of Bradley's records. The district court so ruled because the claims which Bradley sought to bring against GMED resulted in the same injuries as those from the medical malpractice claims brought against Dr. Val-Mejias and, therefore, would be barred by the statute of limitations for the same reasons. Bradley now appeals.

## III

*Discussion*

### A

*The Kansas statute of limitations*

A grant of summary judgment by the district court is reviewed *de novo*. *Simms v. Oklahoma*, 165 F.3d 1321, 1326 (10th Cir. 1999). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and

that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When determining whether judgment as a matter of law is appropriate, "we view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party." *Simms*, 165 F.3d at 1326. This court also reviews district court determinations of state law *de novo*. *Salve Regina College v. Russell,* 499 U.S. 225, 238 (1991); *Mares v. ConAgra Poultry Co.*, 971 F.2d 492, 495 (10th Cir. 1992).

## 1

### *The medical malpractice claims*

Here Bradley is asserting state law claims and it is undisputed that the Kansas law of the forum controls. *See Walker v. Armco Steel Corp.*, 592 F.2d 1133, 1135 (10th Cir. 1979) (noting that a federal court sitting in diversity and administering state law must apply the state law statute of limitations). Accordingly Bradley's claims of medical malpractice are limited by a two year statute of limitations and a four year statute of repose.[1] K.S.A. § 60-513(a)(7). Kansas law also provides when this limitations period commences:

> A cause of action arising out of the rendering of or the failure to render professional services by a health care provider shall be deemed to have accrued at the time of the occurrence of the act giving rise to the cause of action, unless the fact of injury is not reasonably ascertainable until some time after the

---

[1]The difference between a statute of repose and a statute of limitations is that the former serves as an absolute time bar to suit whereas the latter can be tolled.

initial act, then the <u>period of limitation shall not commence until the fact of injury becomes reasonably ascertainable</u> to the injured party, but in no event shall such an action be commenced more than four years beyond the time of the act giving rise to the cause of action.

K.S.A. § 60-513(c) (emphasis added).

Here Bradley's claims of malpractice against Dr. Val-Mejias stem from three incidents: reusing the existing ventricular lead when Dr. Val-Mejias replaced Bradley's pacemaker in 1992; failure to replace the ventricular leads when Dr. Klonis replaced Bradley's pacemaker in 1993; and failure to diagnose a defective ventricular lead through June 1997 when the last meeting Bradley had with Dr. Val-Mejias occurred. App. Vol. II at 403-05. These claims were brought in the suit filed September 1, 2000.

As noted above, medical malpractice claims brought under Kansas law are governed by a four year statute of repose. K.S.A. § 60-513(c). This statute of repose is applicable against the malpractice claim, even where the defendant fraudulently conceals the fact of malpractice from the victim. *Robinson v. Shah*, 936 P.2d 784, 790 (Kan. 1997). In such cases of fraudulent concealment, the putative plaintiff "can maintain an action for deceit against the wrongdoer under some circumstances, not on account of the original negligence but on account of the subsequent wrongdoing–the misrepresentation of fact which deceived the injured party–with the consequence that the time bar ran against the original action." *Id.*

Accordingly, since Bradley filed his suit on September 1, 2000, Bradley's claims

- 8 -

of malpractice by Dr. Val-Mejias in reusing the ventricular lead in 1992 and failing to replace that lead in 1993 are barred by the four year statute of repose. While Bradley's remaining claim, arising from an alleged misdiagnosis through June of 1997, is not barred by the four year statute of repose, it is barred by the two year statute of limitations.

This remaining medical malpractice claim of Bradley arises from an alleged misdiagnosis in June of 1997 when Dr. Val-Mejias diagnosed Bradley with vertigo and shingles. App. Vol. II at 397. As noted above, the statute of limitations on this claim attaches when the "fact of injury becomes reasonably ascertainable." K.S.A. § 60-513(c). The fact of injury is reasonably ascertainable when "objective knowledge of the injury, not the extent of the injury," is known. *P.W.P. v. Johnson County Mental Health Center*, 969 P.2d 896, 902 (Kan. 1998). "The phrase "reasonably ascertainable" means that a plaintiff has the obligation to reasonably investigate available sources that contain the facts of the [injury] and its wrongful causation." *Davidson v. Denning*, 914 P.2d 936, 948 (Kan. 1996). In other words, "Kansas' "fact of injury" standard postpones the running of the limitations period until the time the plaintiff is able to determine that her injury may be caused by some act of the defendant." *Benne v. Int'l Bus. Mach. Corp.*, 87 F.3d 419, 427 (10th Cir. 1996).

This inquiry is undertaken using "an objective standard based upon an examination of the surrounding circumstances." *Id.* "Where there is conflicting evidence as to when a cause of action for medical malpractice is deemed to have accrued under K.S.A.

60-513(c), the matter becomes an issue for determination by the trier of fact." *Jones v. Neuroscience Assoc., Inc.*, 827 P.2d 51, 59 (Kan. 1992). Here, as we explain below, there is no conflicting evidence on this issue of when the cause of action for medical malpractice was deemed to have accrued.

In analyzing misdiagnosis claims, Kansas state courts do not adhere to a bright line rule, used in some states, *see*, *e.g.*, 61 Am. Jur. 2d *Physicians, Surgeons, and Other Healers* § 288 (2002) (citing a Pennsylvania case that held in a case of misdiagnosis, the statute of limitations begins to run at the time of the misdiagnosis rather then at the time of a proper diagnosis), in determining when the statute of limitations begins to run. *See Seymour v. Lofgreen*, 495 P.2d 969, 973-74 (Kan. 1972) (recognizing that, in a misdiagnosis case, the statute of limitations can begin to run when the fact of injury becomes reasonably ascertainable). Instead, the Kansas courts look to the specific facts of each case to determine when the medical malpractice injury claimed was reasonably ascertainable and submitting cases where there is conflicting evidence to the jury. *Jones*, 827 P.2d at 59; *Seymour*, 495 P.2d at 973-74; *Hall v. Miller*, 36 P.3d 328, 334 (Kan. Ct. App. 2001).

Here the district court concluded that as a matter of law, Bradley became aware of this injury in May of 1998 when he consulted with Dr. Morgan who diagnosed him with problems with his pacemaker's "programming and functions." We agree. There are two pieces of substantial and uncontroverted evidence in the record that Bradley knew Dr.

Val-Mejias' diagnosis of shingles and vertigo was wrong prior to his admission to the hospital in September of 1998.

First, Bradley knew that treatment based upon Dr. Val-Mejias' June 1997 diagnosis was ineffective. At a hearing before a Social Security Administration Administrative Law Judge on April 30, 1998, Bradley stated:

> And I would tell him they [sic] symptoms I'm having and stuff. Well, come in and then [Dr. Val-Mejias] would do a little bit of adjustment on [the pacemaker], but it wasn't clearing stuff up and I felt it was a waist [sic] of money.

App. Vol. I at 249. Therefore, well before being admitted to the hospital in September of 1998, Bradley was in fact aware of his injury–that Dr. Val-Mejias was not properly treating his condition.

Second, the record discloses that Bradley received at least two diagnoses contrary to that proffered by Dr. Val-Mejias in June of 1997. First, Bradley was told by an ear specialist, Dr. Peeves, prior to his Social Security Administration hearing, that his symptoms were heart related rather than a result of vertigo. *Id.* at 243. Second, one week after the hearing, on May 6, 1998, Bradley was diagnosed by Dr. Morgan with pacemaker problems stemming from the ventricular lead. *Id.* at 293. Dr. Morgan also advised Bradley that replacing the ventricular lead would solve his symptoms but Bradley choose not to do so. *Id.* Therefore, by May of 1998, Bradley had at least two separate and consistent diagnoses that indicated Dr. Val-Mejias mis-diagnosed Bradley in June of 1997.

Given this information, which was available by May of 1998, Bradley had substantial reasons to question Dr. Val-Mejias's diagnosis of vertigo and shingles being correct. *See* Appellant's Opening Brief at 19 (conceding that Bradley was aware in May of 1998 that pacemaker problems, and not vertigo and shingles, were the source of his symptoms). In other words, by May of 1998, Bradley was aware that he had been injured by Dr. Val-Mejias' misdiagnosis even though he did not know "the exact scientific nature of [his] injuries," i.e., an undiagnosed fractured ventricular lead. *Benne*, 87 F.3d at 427. Consequently, Dr. Val-Mejias's misdiagnosis was "reasonably ascertainable" prior to September 1998 and, therefore, the two year statute of limitations on Bradley's claims arising from the misdiagnosis began to run prior to September 1998 and precludes his claim filed in September 2000. Accordingly, summary judgment for Dr. Val-Mejias is appropriate, there being no conflict in the evidence on the commencement of the running of the statute of limitations.

This conclusion is consistent with the analogous Kansas Supreme Court decision in *Seymour v. Lofgreen,* 495 P.2d at 973-74. There the plaintiff sought treatment for physical ailments, e.g., headaches, swelling of the stomach, nausea, and cramps, from the defendant-physician who did not find any mental illness. *Id.* at 971. During the course of her treatment, the plaintiff's physical symptoms and mental condition worsened. *Id.* Eventually, the plaintiff and her family consulted with a psychiatrist who immediately administered an alternative treatment. *Id.* The plaintiff then sued, more than two years

after her change in physicians, alleging the defendant physician was negligent in failing to diagnose her mental illness.  *Id.*

The Kansas Supreme Court affirmed the trial court's dismissal of the action based upon the Kansas statute of limitations.  *Id.* at 975.  In so holding, the court concluded that as a matter of law, the plaintiff's injury became reasonably ascertainable when she and her family changed doctors and her course of treatment.  *Id.* at 973.  The only exception to this rule, the court observed, was if the plaintiff was under "a legal disability by reason of incapacity." *Id.*

In the instant case, in May of 1998 Bradley changed doctors and began a new course of treatment with Dr. Morgan.  App. Vol. I at 291.  During his consultation with Dr. Morgan, Bradley received an alternative diagnosis and course of treatment.  Specifically, Bradley was advised that his symptoms were due to a pacemaker problem, not vertigo or shingles, *id.* at 293, and was told he could either "continue as he is and replace the ventricular lead when [the] present pacemaker is at end of life . . . [or] replace the ventricular lead at this time." I*d.*  Moreover, it is undisputed that Bradley was not suffering from a legal disability.  Accordingly, by May of 1998, Dr. Val-Mejias's misdiagnosis was reasonably ascertainable and the statute of limitations began to run at that time and the instant action is barred.

**2**

*The fraudulent concealment claims*

Under Kansas law, fraud claims, like medical malpractice claims, are governed by a two year statute of limitations that begins to run when the fraud is discovered. K.S.A. § 60-513(a)(3). Unlike medical malpractice claims, fraud claims are governed by a ten year statute of repose. K.S.A. § 60-513(b). In this case, Bradley alleges that Dr. Val-Mejias fraudulently concealed negligence that occurred during his pacemaker surgery in 1993 by telling him that his problems were due to vertigo and shingles. Appellant's Opening Brief at 20-21. The district court concluded that, as a matter of law, Dr. Val-Mejias's alleged fraud was discovered by May of 1998 when Bradley became aware that his health problems were due to his pacemaker rather than to vertigo and shingles. We agree.

As the district court correctly observed, the statute of limitations on Bradley's fraud claim began to run at the same moment as on his medical malpractice claims. Under Kansas law, the statute of limitations governing fraud claims begins to run when the "fraud is discovered." K.S.A. § 60-513(b). In his fraud claim, Bradley alleges that Dr. Val-Mejias did know in September of 1997 that his symptoms were due to pacemaker problems but intentionally and incorrectly told him that his symptoms were due to vertigo and shingles. Specifically, Bradley alleges that Dr. Val-Mejias tried to "conceal the true source" of his symptoms in order to allow the statute of limitations to run, thereby precluding "any action against himself for the 1992 procedure and for his friend and mentor, Dr. Klonis, in the 1992 and 1993 procedures." Appellant's Reply Br. at 5; App.

Vol. II at 347. Therefore, Dr. Val-Mejias's alleged concealment would be discovered when the "true source" of Bradley's symptoms was discovered. In other words, the fraud would have been discovered when pacemaker problems were determined to be the cause of Bradley's symptoms and, accordingly, that Dr. Val-Mejias's June 1997 diagnosis was incorrect.

For the reasons detailed above, by May of 1998 it became clear that Dr. Val-Mejias's June 1997 diagnosis was incorrect and that the source of Bradley's symptoms was problems with the ventricular lead of his pacemaker. Accordingly, the two year statute of limitations on his fraud claims began to run at that time and the instant action is barred.


**B**

*Leave to file the second amended complaint*

The Federal Rules of Civil Procedure allow a party to amend his complaint after twenty days have elapsed since the opposing party was served "only by leave of court or by written consent of the adverse party," with such amendments being "freely given when justice so requires." Fed. R. Civ. P. 15(a). "The grant or denial of an opportunity to amend is within the discretion of the District Court, but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules."

*Foman v. Davis*, 371 U.S. 178, 182 (1962). "Although Fed. R. Civ. P. 15(a) provides that leave to amend shall be given freely, the district court may deny leave to amend where amendment would be futile. A proposed amendment is futile if the complaint, as amended, would be subject to dismissal." *Jefferson County Sch. Dist. v. Moody's Investor's Services*, 175 F.3d 848, 859 (10th Cir. 1999).

Here Bradley filed a motion to amend his complaint to add direct liability claims against GMED for negligence in the creation, management, retention, and maintenance of his medical record. App. Vol. I at 79. The proposed amendment also deletes references to Dr. Klonis and two vicarious liability claims against GMED and adds two additional claims against Dr. Val-Mejias. *Id.* at 78-79.

The district court denied this motion on the ground that the amendment would be futile as the claims contained therein would be barred by the statute of limitations. As to the direct negligence claim against GMED, the district court observed that even though the claim alleges negligent record keeping, the underlying injury Bradley claims to have suffered stems from his defective pacemaker. Similarly, the district court observed that additional claims against Dr. Val-Mejias also stem from the misdiagnosis of Bradley's pacemaker problems. Accordingly the district court concluded, citing its earlier reasoning, that the new claims contained in the second amended complaint would be barred by the statute of limitations.

On appeal, Bradley argues that the district court erred in assessing when injuries

relating to Bradley's pacemaker problem were "reasonably ascertainable."  For the reasons detailed above, we find no error in the district court's analysis on this point and, therefore, conclude that the district court did not abuse its discretion in denying Bradley's motion to file a second amended complaint.


## IV

*Conclusion*

Accordingly we conclude that, as a matter of law, the misdiagnosis of Bradley by Dr. Val-Mejias became "reasonably ascertainable" by May of 1998.  We also conclude that any fraudulent concealment by Dr. Val-Mejias was discoverable by that time.  We therefore AFFIRM the district court's grant of summary judgment on the ground that the two year statute of limitation bars Bradley's medical malpractice and fraudulent concealment claims.  We further AFFIRM the district court's denial of Bradley's motion to file a second amended complaint on the ground that the claims contained therein would be futile due to the bar of the statute of limitations.

**IT IS SO ORDERED**.