**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**June 4, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

DARLA BROCK,

       Plaintiff-Appellant,

v.

JUANITA GATZ, ARNP;
LADONNA REGIER, M.D.,

       Defendants-Appellees.

No. 06-3181
(D.C. No. 05-CV-1123-MLB)
(D. Kan.)

---

**ORDER AND JUDGMENT**[*]

---

Before **LUCERO**, Circuit Judge, **BRORBY**, Senior Circuit Judge, and
**McCONNELL**, Circuit Judge.

---

Plaintiff-appellant Darla Brock appeals from the order of the district court

granting summary judgment in favor of defendants-appellees on her medical

malpractice claim against them. Ms. Brock alleged that Dr. Reiger and Advanced

Registered Nurse Practitioner (ARNP) Gatz failed to properly diagnose her with

---

[*]    After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is
therefore ordered submitted without oral argument. This order and judgment is
not binding precedent, except under the doctrines of law of the case, res judicata,
and collateral estoppel. It may be cited, however, for its persuasive value
consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

skin cancer.  The district court held that Ms. Brock's claim was barred by Kansas'

statute of limitations for medical malpractice claims and granted summary

judgment to defendants-appellees.  Because we hold that summary judgment was

not proper as a matter of law, we reverse.

I.

A grant of summary judgment by the district court is reviewed
*de novo*. *Simms v. Oklahoma*, 165 F.3d 1321, 1326 (10th Cir.1999).
Summary judgment is appropriate "if the pleadings, depositions,
answers to interrogatories, and admissions on file, together with the
affidavits, if any, show that there is no genuine issue as to any
material fact and that the moving party is entitled to judgment as a
matter of law."  Fed. R. Civ. P. 56(c).  When determining whether
judgment as a matter of law is appropriate, "we view the evidence
and draw reasonable inferences therefrom in the light most favorable
to the nonmoving party."  *Simms*, 165 F.3d at 1326.  This court also
reviews district court determinations of state law *de novo*.  *Salve
Regina College v. Russell*, 499 U.S. 225, 238 . . . (1991); *Mares v.
ConAgra Poultry Co.*, 971 F.2d 492, 495 (10th Cir.1992).

*Bradley v. Val-Mejias*, 379 F.3d 892, 896-97 (10th Cir. 2004).

II.

Ms. Brock was seen by ARNP Gatz on July 24, 2001.  She had made the

medical appointment after she had noticed some lesions that had appeared on her

body, including a brown irregularly shaped lesion on her thigh.[1]  Ms. Brock was

moving to Vermont the week of the appointment and wanted to have the lesions

---

[1]     The irregularity is also referred to as a "mole" at various points in the
record.  We shall refer to it as a "lesion" simply for ease of use.

looked at before she left. ARNP Gatz asked Ms. Brock if she wanted to have the lesion treated with cryotherapy or wait to seek treatment in Vermont. Ms. Brock testified that ARNP Gatz told her: "we can freeze it off, and then if it comes back, that is when you should be concerned." Aplee. Supp. App. at 65. Ms. Brock elected to treat the lesion with cryotherapy. No biopsy of the lesion was performed.[2]

Ms. Brock noticed no change to the site of the previous lesion until either January or February of 2003 when she had noticed that the lesion had reappeared. Since ARNP Gatz had told her to seek further treatment upon such an occurrence, she arranged for an appointment with dermatologist Dr. Edward Benjamin on February 4, 2003. Ms. Brock testified that she told Dr. Benjamin that a lesion that had been previously removed had reappeared, that he examined the area: "[a]nd he said your doctor in Kansas should never freeze those off without doing a biopsy, but this one is fine. And [i]f I remove it, your insurance won't pay for it." Aplt. App. at 31. Dr. Benjamin did, however, remove a lesion from Ms. Brock's back that he found concerning. A subsequent biopsy revealed that the lesion from her back was not cancerous.

---

[2] Dr. Reiger did not examine Ms. Brock but she was ARNP Gatz's supervisor and signed Ms. Brock's medical chart.

In February 2004, Ms. Brock decided to have the lesion removed even if insurance would not pay for it. She saw Dr. Sharon Christie, another dermatologist, to have the lesion removed. Dr. Christie asked Ms. Brock why she waited so long to have the lesion examined. Dr. Christie performed a biopsy on the lesion and Ms. Brock was notified on April 6, 2004, that she had melanoma. Ms. Brock filed her complaint against ARNP Gatz and Dr. Reiger on April 28, 2005. The district court subsequently granted defendants-appellees summary judgment. The parties agreed that Ms. Brock was required by Kansas law to bring her action within two years of the date that the action accrued. But they disagreed on the date the action accrued under Kansas Statutes Annotated § 60-513(c). Under that statute:

> A cause of action arising out of the rendering of or the failure to render professional services by a health care provider shall be deemed to have accrued at the time of the occurrence of the act giving rise to the cause of action, unless the fact of injury is not reasonably ascertainable until some time after the initial act, then the period of limitation shall not commence until the fact of injury becomes reasonably ascertainable to the injured party, but in no event shall such an action be commenced more than four years beyond the time of the act giving rise to the cause of action.

The district court ruled that Ms. Brock's action accrued at the time of her appointment with Dr. Benjamin because "the fact of injury" in her case was "reasonably ascertainable" following that appointment.

III.

Ms. Brock argues that the district court erred in granting summary judgment because, viewing the evidence in the light most favorable to her, "the fact of injury" in her case was not "reasonably ascertainable" until her appointment with Dr. Christie. "Here [Ms. Brock] is asserting state law claims and it is undisputed that the Kansas law of the forum controls." *Bradley*, 379 F.3d at 897.

The Kansas Supreme Court has held that "the term 'reasonably ascertainable' as applied in K.S.A. 60-513 . . . (c), suggests an objective standard based upon an examination of the surrounding circumstances" and that "the objective knowledge of the injury, not the extent of the injury, triggers the statute both in medical and nonmedical malpractice cases." *P.W.P. v. L.S.*, 969 P.2d 896, 901-02 (Kan. 1998).

In *Davidson v. Denning*, a Kansas wrongful death case, the Kansas Supreme Court held that "'[r]easonably ascertainable' does not mean 'actual knowledge.'" 914 P.2d 936, 948 (Kan. 1996). The court held that "[i]nherent in 'to ascertain' is 'to investigate,'" *id.* at 946, and that "[t]he phrase 'reasonably ascertainable' means that a plaintiff has the obligation to reasonably investigate available sources that contain the facts of the death and its wrongful causation,"

*id*. at 948. The Kansas Supreme Court held in *P.W.P.* that this language from *Davidson* "is applicable to medical malpractice actions." 969 P.2d at 901.

In *Roe v. Diefendorf*, the Kansas Supreme Court considered when a "fact of injury becomes reasonably ascertainable to the injured party" under § 60-513 in a tort action. 689 P.2d 855, 858 (Kan. 1984). The court held: "The statute of limitations starts to run in a tort action at the time a negligent act causes injury if both the [negligent] act and the resulting injury are reasonably ascertainable by the injured person." *Id*. at 859. Similarly, this court has previously held that "Kansas' 'fact of injury' standard postpones the running of the limitations period until the time the plaintiff is able to determine that her injury may be caused by some act of the defendant." *Bradley*, 379 F.3d at 898 (internal quotation marks omitted).

In *Roe*, the Kansas Supreme Court distinguished its ruling in the case of *Hecht v. First National Bank & Trust Co.*, 490 P.2d 649 (Kan. 1971), from previous cases ruling that it was knowledge of the fact of injury and not the extent of injury that was important to a statute of limitations determination. In *Hecht*, the plaintiff was diagnosed with Hodgkin's disease and was treated by defendant doctors with radiation. Following radiation treatment in January and February of 1966 the skin on plaintiff's legs turned red and she complained of pain in her

ankles. The plaintiff was told by the defendants on March 2, 1966, that her skin reaction was subsiding and was told on March 11 that it was slowly healing.

The plaintiff got a second opinion of her condition from a different physician, Dr. Lilly, on March 12, 1966. The plaintiff testified that at that time "the top was off the treatment area, it was open, raw and draining." *Id.* at 652 (internal quotation marks omitted). Dr. Lilly "testified [at trial] that his impression was 'that there had been a radiation reaction with breakdown'" and he "confirmed the opinion given by defendants after their examination [the previous day] that the area was healing." *Id.*

The plaintiff in *Hecht* continued to see the defendant doctors following her March 12, 1966, appointment with Dr. Lilly and they continued to tell her that the area of the reaction was healing. It appeared from the record that the first time the defendant physicians suspected any permanent damage was July 22, 1966, and that plaintiff was not told until December of 1966 that the ulcer in her groin area would require surgical repair.

As in this case, a two-year statute of limitation was at issue in *Hecht*. But a previous version of § 60-513 provided that:

> The cause of action in this section shall not be deemed to have accrued until the act giving rise to the cause of action first causes substantial injury, or, if the fact of injury is not reasonably ascertainable until some time after the initial act, then the period of limitation shall not commence until the fact of injury becomes reasonably ascertainable to the injured party, but in no event shall the

period be extended more than ten (10) years beyond the time of the act giving rise to the cause of action.

*Id*. at 654 (quoting Kan. Stat. Ann. § 60-513 (1970 Supp.)). The defendants argued that the plaintiff had actual knowledge of "a substantial or real burn injury" in February of 1966, but that in any event "she either was or should have been made so aware by her consultation with Dr. Lilly on March 12, 1966, one day more than two years preceding the filing of her petition." *Id*. at 653.

The Kansas Supreme Court overturned the trial court's grant of summary judgment to defendants. It stated: "It is true that plaintiff knew she had an unhealed sore on March 12, when she saw Dr. Lilly, but both Dr. Lilly and [the defendant doctor who saw the plaintiff on March 11] described the condition then as slowly healing and [determined] that the conservative treatment which plaintiff was then undergoing would likely result in a complete healing." *Id*. at 654-55. The Kansas Supreme Court therefore held:

> We do not believe that plaintiff's knowledge of her condition from her own observation, and that acquired from her physicians, is sufficient to justify a determination, as a matter of law, that she knew or could have reasonably ascertained on March 13, 1966, that she had suffered substantial injury *caused by the alleged negligent treatment of defendants*.

*Id*. at 655 (emphasis added).

The Kansas Supreme Court also recognized that–other than the ten-year statute of repose incorporated in the previous version of § 60-513(b)–the statute

codified what "essentially what has been identified as the 'discovery rule.'" *Id*. at 657. The court then quoted with approval the following definition of the "discovery rule" from a Michigan Supreme Court case:

> Simply and clearly stated the discovery rule is: The limitation statute or statutes in malpractice cases do not start to run until the date of discovery, or the date when, by the exercise of reasonable care, plaintiff should have discovered the wrongful act.

*Id*. at 657 (quoting *Johnson v. Caldwell*, 123 N.W.2d 785, 791 (Mich. 1963), superseded by statute).

In *Cleveland v. Wong*, the plaintiff underwent a surgical procedure known as a "transurethral resection prostate (TUR)." 701 P.2d 1301, 1304 (Kan. 1985). The plaintiff was informed by the doctor that he would experience temporary incontinence and impotence following surgery. The surgery was completed on May 19, 1978, and, in the fall of 1979 after continued incontinence and impotence, the plaintiff contacted a urological surgeon for a second opinion. That surgeon told the plaintiff that his incontinence and impotence was permanent. The plaintiff then sued the doctor who performed the surgery.

The defendant doctor argued that because "plaintiff was both incontinent and impotent immediately following th[e] surgery, the fact of injury was reasonably ascertainable to him [at that time]." *Id*. at 1306. The Kansas Supreme Court held that "while plaintiff knew that he was both incontinent and impotent immediately after the surgery, he had no reason to suspect that those conditions

were permanent or that those conditions *were the result of any negligence or malpractice on the part of the defendant.*"  *Id*. (emphasis added).  It therefore held that "[t]he symptoms of the injury were known to the plaintiff, but the fact of injury was not reasonably or immediately ascertainable."  *Id*.

*Hecht* and *Cleveland*, therefore, stand for the proposition that under Kansas law it is not enough to start the statute of limitations running that it is reasonably ascertainable to a party that he or she has sustained an injury.  Instead it must be reasonably ascertainable that an injury has been sustained that may have been caused by some negligent act or omission of the defendant such that legal recovery is possible.  But the full extent of that legally recoverable injury need not be known.

## IV.

Here, the grant of summary judgment was improper.  The legal injury alleged by Ms. Brock was the improper treatment of a possibly cancerous lesion that resulted in a delayed diagnosis of skin cancer.  The "fact of injury" was not reasonably ascertainable to her at the time the lesion reappeared.  ARNP Gatz and Ms. Brock had specifically discussed the possibility that the lesion might return and further treatment might be needed.  Consequently, while the reappearance of the lesion was cause for concern that Ms. Brock might have skin cancer, it would not have put Ms. Brock on notice that the defendants' previous act of freezing off

-10-

a suspicious lesion and waiting to see if it returned might have constituted negligent medical treatment. In other words, at the time the lesion reappeared "[t]he symptoms of the injury were known to [Ms. Brock], but the fact of injury was not reasonably or immediately ascertainable." *Cleveland*, 701 P.2d at 1306.

At the appointment with Dr. Benjamin, Ms. Brock was alerted for the first time to ARNP Gatz and Dr. Reiger's allegedly negligent treatment for the first time (when Dr. Benjamin stated "your doctor in Kansas should never freeze [lesions] off without doing a biopsy," Aplt. App. at 31), but was simultaneously informed that she had not been harmed by that negligent treatment (when Dr. Benjamin stated: "but this [lesion] is fine," *id.*). Consequently, under the evidence presented to the court in the summary judgment motion, the first time that Ms. Brock could have reasonably ascertained both that she had skin cancer and that the diagnosis of that skin cancer might have been delayed by defendants-appellees' negligence was after meeting both Dr. Benjamin and Dr. Christie. *See Bradley*, 379 F.3d at 898 ("Kansas' 'fact of injury' standard postpones the running of the limitations period until the time the plaintiff is able to determine that her injury may be caused by some act of the defendant.") (internal quotation marks omitted).

Defendants-appellees argue that it was unreasonable for Ms. Brock to have relied on Dr. Benjamin's assertion that the lesion was not cancerous. Their

argument rests on a misstatement of fact in the district court's summary judgment order. The district court made the following findings regarding Ms. Brock's treatment by Dr. Benjamin.

(1)     Importantly, Dr. Benjamin stated that a lesion should always be biopsied and not "burned off." Plaintiff generally understood the purpose and significance of a biopsy. However, and apparently in violation of his own rule, Dr. Benjamin did not biopsy the lesion but instead examined it visually, told plaintiff it looked "fine," and that the "lesion was probably benign and there was nothing to worry about."

Aplt. App. at 19-20 (quoting R., doc. 43 at 14, reproduced in Aplee. Supp. App. at 103).

(2)  The district court found that Ms. Brock should have recognized the inconsistency of Dr. Benjamin's assertions, finding: "Dr. Benjamin was critical of Gatz for not biopsing the lesion in 2001 ('a lesion should always be biopsied') but he did not biopsy the lesion in 2003." *Id*. at 20.

(3) The district court held that:

> what Dr. Benjamin did, and failed to do, bears directly on plaintiff's duty to reasonably investigate. . . . When Dr. Benjamin told her that a lesion "always" should be biopsied, but then did not do so, it was <u>not</u> reasonable for plaintiff to accept Dr. Benjamin's statement that the lesion was "fine." Plaintiff had an obligation to conduct a "reasonable investigation" in light of Dr. Benjamin's inconsistent medical treatment and advice.

*Id*.

-12-

The district court's ruling, therefore, rested squarely on its factual finding that Dr. Benjamin advised Ms. Brock that "a lesion should always be biopsied" but then failed to follow his own advice. Even if we agreed for the sake of argument that the reappearance of a lesion, followed by a statement that "a lesion should always be biopsied," would have been enough to alert Ms. Brock to both possible negligence and the fact that any reasonable investigation of whether she had skin cancer needed to include a biopsy, there was no evidence that Dr. Benjamin actually told Ms. Brock that "a lesion should always be biopsied." Aplt. App. at 19.

In the factual section of their amended memorandum in support of their motion for summary judgment, ARNP Gatz and Dr. Reiger alleged that: "Dr. Benjamin examined the lesion on plaintiff's thigh and notified plaintiff that Ms. Gatz should not have treated the lesion with cryotherapy back in 2001. Dr. Benjamin also notified plaintiff that the lesion should have been biopsied in 2001." Aplee. Supp. App. at 48. As support for these factual assertions, ARNP Gatz and Dr. Reiger cite to portions of Ms. Brock's deposition. The first citation is the one quoted above: "And he said your doctor in Kansas should never freeze those off without doing a biopsy, but this one is fine. And if I remove it, your insurance won't pay for it." *Id.* at 70. The second citation is from later in the deposition when Ms. Brock again testified that "[Dr. Benjamin] said, well, your

-13-

doctor in Kansas should never freeze those off without a biopsy." *Id*. at 72.

In the third citation, Ms. Brock merely agrees that the lesion was examined by

Dr. Benjamin and he concluded that it was probably benign and that there was

nothing to worry about. *Id*. at 76. In the final citation, Ms. Brock again agrees

that Dr. Benjamin said that the lesion should not have been frozen off without

having a biopsy done. *Id*. at 76. These statements do not justify characterizing

Ms. Brock's testimony as asserting that Dr. Benjamin told her that a lesion should

*always* be biopsied.

The defendants-appellees also stated in the argument section of their

amended memorandum that Ms. Brock saw a number of physicians between

1986 and 1992 and that the office notes from those visits revealed "that plaintiff

was counseled about: . . . c. The need to have all [unusual] lesions biopsied to

rule out malignancy, even if it is suspected that they are benign; . . ." Aplee.

Supp. App. at 53-54. The two office notes appended to the memorandum do not

support this assertion.[3]

_____

[3]     There is a 1992 record from a Dr. Charles Ruggles which reflects that the
doctor excised a "nevus" that he suspected was benign and it appears that a
biopsy was done at that time. Aplee. Supp. App. at 81. But it cannot be
discerned from the record that Dr. Ruggles even informed Ms. Brock that he
suspected the nevus was benign; and it certainly cannot be said that the record
shows he counseled Ms. Brock that all unusual lesions should be biopsied.

V.

In short, when read in the light most favorable to Ms. Brock, the record simply shows that Dr. Benjamin told Ms. Brock that suspicious lesions should not be burned off without first being biopsied, *not* that it was impossible to tell from a visual examination that a lesion was not cancerous. Consequently, the evidence was not sufficient to support the district court's ruling that as a matter of law the "fact of injury" was reasonably ascertainable to Ms. Brock after her appointment with Dr. Benjamin. The district court's April 19, 2006, order granting summary judgment to ARNP Gatz and Dr. Reiger is therefore REVERSED and its judgment of the same date in favor of ARNP Gatz and Dr. Reiger is VACATED. The case is REMANDED to the district court for further proceedings consistent with this order and judgment.

Entered for the Court

Wade Brorby
Senior Circuit Judge

-15-