**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 11, 2019**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

KEVIN FRANKEN,

      Plaintiff–Appellant,

v.

DAVID BERNHARDT, Acting Secretary
of the Interior;[*] YELLOWSTONE
NATIONAL PARK; DAVID HALLAC,

      Defendants–Appellees.

No. 18-8019
(D.C. No. 2:16–CV–00189–ABJ)
(D. Wyo.)

**ORDER AND JUDGMENT**[**]

Before **HOLMES**, **McKAY**, and **CARSON**, Circuit Judges.

Plaintiff Kevin Franken claims that his former federal government employer and

supervisor violated his rights when, at the end of his employment, they prevented him

from accessing all of the personal electronic files he had saved on his government work

computer and did not give him the "symbolic wooden arrow" that is customarily given to

departing long-term employees. (Appellant's App. at 23.) The district court dismissed

---

[*] Current Acting Secretary David Bernhardt has been automatically substituted for the
prior Secretary pursuant to Rule 43(c)(2) of the Federal Rules of Appellate Procedure.

[**] This order and judgment is not binding precedent, except under the doctrines of law of
the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value
consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

his complaint with prejudice on several grounds, including preemption under the Civil Service Reform Act. This appeal followed.

"In reviewing the grant of a motion to dismiss, we accept the allegations in the complaint as true." *Doe v. Woodard*, 912 F.3d 1278, 1285 (10th Cir. 2019).

Plaintiff is a former employee of Yellowstone National Park, a division of the United States Department of the Interior. Plaintiff alleges that it is a common practice for government employees to maintain personal files on their work computers and that Yellowstone's electronic use policy permits such personal use of government-owned work computers. In accordance with this practice and policy, Plaintiff stored thousands of personal files on his work computer at his office in Yellowstone.

While he was still employed by the Park, Plaintiff filed a complaint with the Equal Employment Opportunity Commission alleging discrimination and retaliation based on his sexual orientation and advocacy for marriage equality. The parties settled the EEOC claim on January 11, 2013, agreeing in part that Plaintiff would be transferred to a different federal agency in California approximately one month later.

On Plaintiff's last day of work, in February 2013, he "attempted to access the computer at his office" to remove his personal files, but he was unable to do so because he had been "locked out of his computer," even though other departing employees are granted "the opportunity to recover [their] property" when they leave. (*Id.* at 13, 23.) The next month, Plaintiff's supervisor made two purported attempts to return Plaintiff's electronic files to him, but Plaintiff alleges that he received no files in the first attempt

and only a portion of the files in the second attempt. After the second attempt, Plaintiff's supervisor "represented that he 'provided all of the files that [he] was authorized to make available.'" (*Id.* at 14.) Plaintiff further alleges that "[a]n unknown employee of the Government Defendants refused to send all of Plaintiff's files to him." (*Id.*) Finally, Plaintiff's supervisor allegedly failed to present him with the symbolic wooden arrow that is customarily given to departing long-term Yellowstone employees.

In his complaint, Plaintiff contended that the defendants' failure to provide him with all of the personal files he had saved on his work computer constituted conversion and violated his First Amendment, due process, and equal protection rights. He also asserted that his supervisor violated his First Amendment and equal protection rights by failing to give him a symbolic wooden arrow when he transferred away from Yellowstone.

The district court granted the defendants' motion to dismiss on several grounds, including preemption under the Civil Service Reform Act. The district court denied leave to amend, noting that Plaintiff had already had two opportunities to amend his complaint and finding that "any further amendments would be futile." (*Id.* at 155.)

We review the district court's dismissal of the complaint de novo. *Smith v. United States*, 561 F.3d 1090, 1097–98 (10th Cir. 2009). We agree with the district court that all of Plaintiff's claims are preempted by the CSRA. This statute created "an elaborate, comprehensive scheme that encompasses substantive provisions forbidding arbitrary action by supervisors," establishes procedures "by which improper action may be

-3-

redressed," and "appl[ies] to a multitude of personnel decisions that are made daily by federal agencies." *Bush v. Lucas*, 462 U.S. 367, 385–86, 385 n.25 (1983); *see also, e.g.*, *United States v. Fausto*, 484 U.S. 439, 443–45 (1988). This comprehensive scheme "preempts other federal and state claims complaining of prohibited employment practices and precludes claims asserted directly under the Constitution." *Pretlow v. Garrison*, 420 F. App'x 798, 801 (10th Cir. 2011).[1]

Employment practices that are prohibited under the CSRA include taking or failing to take "any personnel action" for discriminatory or retaliatory reasons. 5 U.S.C. § 2302(b)(1) and (9). "[P]ersonnel action," in turn, is defined broadly to include "a decision concerning pay, benefits, or awards," and "any other significant change in duties, responsibilities, or working conditions." *Id.* § 2302(a)(2)(A)(ix) and (xii). Even where an action does not fall under this broad definition of prohibited personnel actions, it may still be preempted by the CSRA: As we held in *Hill v. Dep't of Air Force*, 884 F.2d 1318, 1320–21 (10th Cir. 1989), because Congress established this comprehensive scheme to administer public rights in the context of federal employment, it is inappropriate to provide a judicial remedy beyond the regulatory scheme even if the complained-of action is not "a listed prohibited personnel practice."

---

[1] We note that there may be some exceptions to this broad preemption, *see, e.g.*, *Wilson v. Harvey*, 156 F. App'x 55, 57 n.4 (10th Cir. 2005) ("Contrary to the district court's ruling, the CSRA does not preempt Title VII."), but the parties do not argue that any of these exceptions are applicable here, and thus we do not address them.

Accordingly, in *Hill* we held that the CSRA preempted a federal employee from pursuing a *Bivens* claim against his supervisor for "eavesdropping on his personal telephone conversations," even though this was "not an allegation of a violation of a listed prohibited personnel practice." *Id.* at 1321. We explained, citing to the Supreme Court's holding in *Bush*, that our focus in this analysis must be on "the special factor of federal employment," not "[t]he nature of the particular constitutional injury" at issue. *Id.* Thus, the CSRA preempts claims arising directly out of a federal employment relationship even where the plaintiff has no remedy under the CSRA. *Id.*

In *Lombardi v. Small Business Administration*, 889 F.2d 959, 961 (10th Cir. 1989), we further explained that the CSRA preempts claims based on violations that occur after the employment relationship was terminated, if these violations "occurred only as a result of the employment relationship" the plaintiff had with the government. We thus rejected a former federal employee's argument that he could pursue claims based on alleged post-termination violations: "His position as a federal employee is central to his complaints, and it is this employment relationship that the Supreme Court emphasized in *Bush* and its progeny, rather than the nature of the specific violation involved." *Id.* The alleged post-termination timing of the violations was insufficient to "distinguish [the case] from the numerous other cases finding no *Bivens* remedy in similar situations." *Id.*

As in *Hill* and *Lombardi*, Plaintiff's claims are preempted by the CSRA because all of the alleged violations of his rights "occurred only as a result of the employment relationship," *id.*, he had with the government. He alleges that, at the end of his

-5-

employment relationship with the government, his supervisor and other government officials prevented him from accessing the files he had placed on the government computer at the government office where he worked as a government employee. He also alleges that the government denied him a symbolic token of long-term government employment that was given to other government employees. All of his claims arise from these two allegations, which are both inextricably tied to his employment relationship with the federal government. His claims are thus preempted under the reasoning of *Hill* and *Lombardi*, regardless of whether or not these complained-of actions would fall under the CSRA's definition of prohibited employment practices and regardless of the timing of the alleged violations.

In reaching this conclusion, we reject Plaintiff's argument that his claims fall outside the CSRA because his supervisor's actions were allegedly motivated by personal discriminatory and retaliatory animus rather than government business reasons. Because one of the main purposes of the CSRA is to prohibit government supervisors from taking personnel actions based on such impermissible motivations, *see* § 2302(b)(1), (9), and (10), Plaintiff's allegations of discriminatory and retaliatory animus in fact support CSRA preemption, rather than negate it as he contends.

Based on *Hill* and *Lombardi*, we also affirm the district court's denial of leave to amend the complaint on the basis of futility. Plaintiff has not set forth any possible amendment that would allow him to escape CSRA preemption for his claims arising out of his federal employment at Yellowstone National Park, and thus he has not shown that

the district court erred in denying leave to amend. *See Bradley v. Val-Mejias*, 379 F.3d 892, 901 (10th Cir. 2004) ("Although Fed. R. Civ. P. 15(a) provides that leave to amend shall be given freely, the district court may deny leave to amend where amendment would be futile. A proposed amendment is futile if the complaint, as amended, would be subject to dismissal." (internal quotation marks omitted)).

Because we affirm the district court's dismissal on the basis of CSRA preemption, we need not address the district court's other reasons for dismissal. However, we note that the district court lacks subject matter jurisdiction over claims that are preempted by the CSRA. *See Elgin v. Dep't of Treasury*, 567 U.S. 1, 23 (2012) ("For the foregoing reasons, we conclude that it is fairly discernible that the CSRA review scheme was intended to preclude district court jurisdiction over petitioners' claims."); *Lombardi*, 889 F.2d at 960; *cf. Pliuskaitis v. USA Swimming*, 720 F. App'x 481, 486 (10th Cir. 2018) ("[T]he Sports Act preempts Mr. Pliuskaitis's claims, so the district court properly dismissed those claims under Rule 12(b)(1) for lack of subject matter jurisdiction."). Thus, Plaintiff's claims should have been dismissed without prejudice for lack of jurisdiction. *See Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1218 (10th Cir. 2006). We accordingly remand this case to the district court so the dismissal may be modified to be without prejudice. *See id.* at 1220.

The district court's holding that Plaintiff's claims are preempted by the CSRA is **AFFIRMED**, but we **REMAND** with directions for the district court to modify the

dismissal to be without prejudice.

Entered for the Court


Monroe G. McKay
Circuit Judge